**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CRAIG JAMES SHERMAN, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6833** |
| **THIBODAUX POLICE DEPARTMENT, ET AL.** | **SECTION "E" (2)** |

## ORDER AND REASONS

Before the Court is an objection[1] filed by Plaintiff Craig James Sherman, Sr. to a Report and Recommendation[2] issued by the assigned Magistrate Judge on Plaintiff's complaint.[3]

## BACKGROUND

While incarcerated at the Lafourche Parish Correctional Complex, on December 4, 2023, Plaintiff, *pro se*, filed this complaint *in forma pauperis* against Defendants Thibodaux Police Department and Officer Jason Slosarex.[4] Plaintiff then filed a response to an order from the Magistrate Judge,[5] providing further details about his complaint.[6] On June 27, 2024, this Court adopted the Magistrate Judge's Report and Recommendation recommending dismissal without prejudice of Plaintiff's complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).[7] On January 5, 2026, Plaintiff filed a motion to reopen the case.[8] This Court adopted the Magistrate Judge's Report and Recommendation recommending Plaintiff's motion to reopen be

[1] R. Doc. 33.
[2] R. Doc. 32.
[3] R. Doc. 3.
[4] *Id.*
[5] R. Doc. 10.
[6] R. Doc. 11.
[7] R. Doc. 20.
[8] R. Doc. 24.

granted.[9] The Magistrate Judge then ordered[10] Plaintiff to provide the court with more factual information, to which Plaintiff filed a response, supplementing his original complaint.[11] The Magistrate Judge then held a *Spears* hearing on April 28, 2026, during which Plaintiff testified to additional factual allegations.[12]

In his pleadings and testimony at the *Spears* hearing, Plaintiff alleges that, when the police were called to 619 Sycamore Street on November 8, 2022 for a noise complaint, Plaintiff happened to be standing in the yard by the road at this address.[13] Plaintiff alleges he saw high-beam headlights appear out of the darkness and a car accelerating at a high speed.[14] Plaintiff alleges there had been a number of drive-by shootings in his city, and that he, along with a friend, walked under a tree to take cover.[15] Plaintiff alleges he then realized the car was a police vehicle, saw the car come to a halt, and saw Officer Slosarex immediately approach him.[16] Plaintiff alleges he told Officer Slosarex that neither he nor his friend was the cause of the noise, and Officer Slosarex asked Plaintiff why he ran away from him.[17] Plaintiff alleges that he again told Officer Slosarex he was not the cause of the noise complaint.[18]

Plaintiff alleges that after further discussion Officer Slosarex accused him of having drugs, and that, after Plaintiff told Officer Slosarex he was engaging in racial profiling, the officer laughed and said "I know you got drugs."[19] Plaintiff alleges he was then searched

---

[9] R. Doc. 27.
[10] R. Doc. 28.
[11] R. Doc. 29
[12] R. Doc. 31; *see also* R. Doc. 32 at pp. 4-5 (detailing what Plaintiff testified to in the hearing).
[13] R. Doc. 3 at p. 4; R. Doc. 11 at p. 1.
[14] R. Doc. 29 at p. 2.
[15] *Id.*
[16] *Id.*
[17] *Id.* at p. 3.
[18] *Id.*
[19] R. Doc. 3 at p. 4.

and no drugs were found.[20] Plaintiff alleges he eventually gave Officer Slosarex his name, after which an outstanding warrant came back under his name.[21] Plaintiff alleges Officer Slosarex brought him back to his police car, unbuckled Plaintiff's pants, and fondled Plaintiff's genitals while searching him again.[22] Plaintiff alleges no drugs were found after this second search.[23]

Plaintiff testified at the *Spears* hearing that he was then arrested on the outstanding warrant, which was for a domestic battery charge.[24] Plaintiff testified at the *Spears* hearing that he was never charged with any crime as a result of the events on November 8, 2022.[25] Plaintiff also testified at the *Spears* hearing that the domestic battery charge, for which there was an outstanding warrant, was later dismissed, and that he is currently incarcerated in the Lafourche Parish Correctional Complex on a probation violation for an unrelated drug possession charge.[26] Plaintiff seeks monetary compensation pursuant to 42 U.S.C. § 1983 against Officer Slosarex and the Thibodeaux Police Department.[27]

The Magistrate Judge issued a Report and Recommendation on August 24, 2026, recommending dismissal of Plaintiff's claim against the Thibodaux Police Department as frivolous and otherwise for failure to state a claim for which relief can be granted.[28] The Magistrate Judge noted that Louisiana's sheriff's offices and city departments are not considered to be "persons" for purposes of 42 U.S.C. § 1983 liability, and the Thibodaux

[20] *Id.*
[21] *Id.*
[22] R. Doc. 3 at pp. 4-5; R. Doc. 33 at p. 2.
[23] R. Doc. 3 at p. 5.
[24] R. Doc. 32 at pp. 4-5.
[25] *Id.* at p. 5.
[26] *Id.*
[27] *Id.* at p. 11; R. Doc. 3 ("I would like to be compensated for the wrongful actions of the officer").
[28] R. Doc. 32 at p. 13.

Police Department is not an entity capable of being sued.[29] The Magistrate Judge recommended dismissal of Plaintiff's claim against Officer Slosarex as barred by 42 U.S.C. § 1997e(e) and for the failure to state a claim for which relief can be granted, but recommended that Plaintiff be given leave to amend.[30] The Magistrate Judge found that "Sherman appears to state a non-frivolous claim against Officer Slosarex for an unreasonable seizure on November 8, 2022."[31] However, the Magistrate Judge found that a section of the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(e), nonetheless precluded Plaintiff's claim for compensatory damages resulting from the unreasonable seizure.[32] The Magistrate Judge quoted the portion of Section 1997e(e) providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of *physical injury*," and noted that Plaintiff alleged no physical injury.[33] Plaintiff alleged only "humiliat[ion] in public (including being told he is a drug dealer), harass[ment], and sexual[] harass[ment]."[34] In Plaintiff's objection to the Magistrate Judge's Report and Recommendation, Plaintiff conceded, "I'm not saying that I was physical hurt, but mentally I am."[35] The Magistrate Judge found that the § 1997e(e) limitation applies to claims involving monetary relief for "deprivations of liberty such as false arrest and unreasonable seizure."[36] Based on her finding that the § 1997e(e) limitation is applicable to Plaintiff's claim and Plaintiff did not allege any physical injury,

[29] *Id.* at p. 9.
[30] *Id.* at p. 13. The Magistrate Judge noted that § 1997e(e) would not preclude a recovery of nominal or punitive damages. *Id.* at p. 11.
[31] *Id.* at p. 10.
[32] *Id.* at p. 11.
[33] *Id.* (emphasis added).
[34] R. Doc. 11 at p. 3.
[35] R. Doc. 33 at p. 2.
[36] R. Doc. 32 at p. 11.

the Magistrate Judge recommended dismissal of Plaintiff's claim against Officer Slosarex, but that he be given leave to amend.[37]

**LEGAL STANDARD**

Courts have a duty to screen initial filings to independently assess the merits of a complaint filed by a litigant requesting to proceed *in forma pauperis* and to dismiss claims as frivolous that have no arguable basis in law or fact.[38] A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."[39]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[40] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[41] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[43] "[T]hreadbare

[37] *See id.*
[38] 28 U.S.C. § 1915A; 28. U.S.C. § 1915(e)(2); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).
[39] *Neitzke*, 490 U.S. at 327.
[40] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[42] *Id.*
[43] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[44]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[45] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[46] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[47]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[48] "To the extent that an *in forma pauperis* complaint fails to state a claim because it lacks even an arguable basis in law, Rule 12(b)(6) and section 1915(d) both counsel dismissal."[49] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) frivolousness standard is not."[50]

A district court evaluating a magistrate judge's recommendation may adopt those portions of the recommendation to which no specific objection is made, as long as those recommendations are not clearly erroneous.[51] However, when a party makes "specific,

---

[44] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[45] *Twombly*, 550 U.S. at 555.
[46] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[47] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[48] *Neitzke*, 490 U.S. at 327.
[49] *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).
[50] *Id.*
[51] 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

written" objections to the report within fourteen days after being served with a copy of the magistrate judge's recommendations, the district court must undertake a *de novo* review of those contested aspects of the report.[52] "In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found."[53] "An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific."[54] However, a document filed *pro se*, including an objection to a magistrate judge's report and recommendation, is to be liberally construed.[55] If a party makes a specific objection, the Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[56]

## <u>LAW AND ANALYSIS</u>

### I. Defendant Thibodaux Police Department is not an entity capable of suing and being sued under 42 U.S.C. § 1983.

Federal Rule of Civil Procedure 17 determines which parties may bring a lawsuit in federal court. Federal Rule of Civil Procedure 17(a) governs which parties are considered the "real party in interest," namely the parties that possess the substantive legal right to bring a lawsuit.[57] Federal Rule of Civil Procedure 17(b) references "capacity," which Black's Law Dictionary defines as "the satisfaction of a legal qualification . . . that

---

[52] *Id.*
[53] *Peterson v. Day*, No. CV 21-2027, 2022 WL 16758322, at *2 (E.D. La. Nov. 8, 2022).
[54] *Id.*
[55] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).
[56] Fed. R. Civ. P. 72(b)(3).
[57] FED. R. CIV. P. 17(a); *See Real Party in Interest*, LEGAL INFO. INST., CORNELL L. SCH., https://www.law.cornell.edu/wex/real_party_in_interest (last visited November 2, 2026).

determines one's ability to sue or be sued."[58] Federal Rule of Civil Procedure 17(b) provides, in relevant part:

> Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
> (2) for a corporation, by the law under which it was organized; and
> (3) for all other parties, by the law of the state where the court is located.[59]

Given that Defendant, the Thibodaux Police Department, is neither an individual nor a corporation, capacity to sue or be sued is determined by the law of the state in which the court is located, which in this case is Louisiana.[60] "The law of Louisiana affords no legal status to the 'Parish Sheriff's Department' wherein said department can sue or be sued."[61] In *Norwood v. City of Hammond*, for example, Plaintiff brought a § 1983 claim alleging discrimination against the City of Hammond Police Department. The district court found that the City of Hammond police department is not an entity capable of suing or being sued under Louisiana law and dismissed the claim pursuant to Federal Rule of Civil Procedure 17(b)(3).[62] Plaintiff's § 1983 claim against the Thibodaux Police Department must be dismissed with prejudice because the Thibodaux Police Department is not an entity capable of suing and being sued under Louisiana law. In addition, federal courts have recognized that city police departments are not considered to be "persons" for

---

[58] *Capacity*, BLACK'S LAW DICTIONARY (10th ed. 2014).
[59] FED. R. CIV. P. 17(b).
[60] *See* FED. R. CIV. P. 17(b)(3).
[61] *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) (quoting *Porche v. St. Tammany Par. Sheriff's Off.*, 67 F. Supp. 2d 631 (E.D. La. 1999)).
[62] *Norwood v. City of Hammond*, No. 99-879, 1999 WL 777713, at *3 (E.D. La. Sept. 30, 1999).

purposes of § 1983 liability under federal law as well.[63] Thus, Plaintiff's claim also must be dismissed with prejudice on federal law grounds. Defendant did not make any specific objections to the Magistrate Judge's Report and Recommendation with respect to the Thibodaux Police Department. This Court finds that the Magistrate Judge's findings of fact and law with respect to the Thibodaux Police Department were not clearly erroneous and will adopt that portion of the Magistrate Judge's Report and Recommendation.

## II. Section 1997e(e) of the PLRA does not apply because Plaintiff's claim is based on damages he suffered as the result of behavior occurring before he was incarcerated.

At the outset, this Court agrees with the Magistrate Judge's Report and Recommendation finding that "Taking Sherman's assertions as true, which the Court does at this stage of the proceedings, Sherman appears to state a non-frivolous claim against Officer Slosarex for an unreasonable seizure on November 8, 2022.[64] However, the Magistrate Judge recommended that Plaintiff's claim for damages for emotional distress resulting from this alleged unreasonable seizure be dismissed because he did not allege any physical injury.[65] Section 1997e(e) of the PLRA provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury *suffered while in custody* without a prior showing of physical injury."[66] This begs the question: under § 1997e(e), are damages for emotional distress suffered during a pre-incarceration interaction with a police officer

[63] *See, e.g.*, *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, at *1 (E.D. La. Jan. 22, 1993) ("Defendant's motion to dismiss the Gretna Police Department is granted because the police department is not a separate "person" subject to suit within the meaning of section 1983.).
[64] R. Doc. 32 at p. 10.
[65] *Id.* at p. 11.
[66] 42 U.S.C. § 1997e(e) (emphasis added).

recoverable without a showing of physical injury when the action is filed while the plaintiff is in prison?

After examining the PLRA, the Court finds that § 1997e(e) is ambiguous. On the one hand, the requirement of a physical injury being necessary to recover for emotional distress might apply to any and all actions by prisoners while the prisoner is in prison custody, regardless of when the conduct that caused the emotional injury occurred.[67] On the other hand, the requirement of physical injury might apply only if the mental or emotional injury resulted from prison conditions, that is conduct that occurred in the correctional facility.[68]

### A. While the meaning of "[n]o federal civil action may be brought by a prisoner confined in jail . . . for a mental or emotional injury . . . without a prior showing of physical injury" is ambiguous, principles of statutory interpretation, including legislative history, convince the Court that the prohibition applies only if the mental or emotional injury resulted from prison conditions.

"[T]he clear evidence of Congressional intent may illuminate ambiguous text."[69] In this case, the legislative history of the PLRA provides guidance. It is clear to the Court the PLRA was enacted primarily to curtail frivolous lawsuits filed by prisoners while they are in custody and they are complaining about prison conditions.[70] The PLRA was introduced

---

[67] *See Napier v. Preslicka*, 314 F.3d 528, 537-38 (11th Cir. 2002) (majority opinion), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021).
[68] *See id; see also Napier v. Preslicka*, 331 F.3d 1189, 1191 (11th Cir. 2003) (rehearing *en banc* denied) (Barkett, J., dissenting) (explaining that the antecedent "a prisoner confined in a jail, prison, or other correctional facility" implies that Congress meant "prison" custody).
[69] *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011).
[70] For an in-depth discussion of the PLRA's legislative history, see *Napier v. Preslicka*, 314 F.3d 528, 537-38 (11th Cir. 2002) (Napier, J., dissenting), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021); *Napier v. Preslicka*, 331 F.3d 1189, 1193 n. 7 (11th Cir. 2003) (rehearing *en banc* denied) (Barkett, J., dissenting).

in May 1995 by Senators Dole and Kyl as Senate Resolution 866.[71] As the two principal architects of the PLRA, their statements merit special consideration.[72] Senator Dole's remarks are illuminating and worth quoting in full:

> Unfortunately, the litigation explosion now plaguing our country does not stop at the prison gate . . . [T]he number of "due-process and cruel and unusual punishment" complaints filed by prisoners has grown astronomically-from 6,600 in 1975 to more than 39,000 in 1994. These suits can involve such grievances as insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety. The list goes on and on."[73]

As quoted above, Senator Dole identified examples of the type of prisoner lawsuits Congress intended to curtail. All of them—whether complaining about a defective haircut by a prison barber or being served the wrong kind of peanut butter while in prison—are lawsuits about conditions in the prison. Senator Dole does not provide any examples of lawsuits by prisoners involving pre-incarceration events.

The statement of Senator Kyl, the other chief architect of the bill, confirms this rationale. Senator Kyl explicitly discussed the PLRA's bar on inmate lawsuits for mental or emotional injury suffered "while in custody," stating:

> Sections 4 and 5 of the bill will bar inmate lawsuits for mental or emotional injury suffered *while in custody* unless they can show physical injury. Of the 60,086 prisoner petitions in 1994 about two-thirds were prisoner civil rights petitions, according to the Administrative Office of the U.S. courts. Prisoner civil rights petitions are brought under 42 U.S.C. 1983. Section 1983 petitions are claims brought in Federal court by State inmates seeking redress for a violation

---

[71] S. Res. 866, 104th Congress (1995); 141 Cong. Rec. S7498-01 (daily ed. May 25, 1995) ("Mr. President, I am pleased to join today with my distinguished colleague from Arizona, Senator Kyl, in introducing the Prison Litigation Reform Act of 1995.").

[72] *See Harris v. Garner*, 216 F.3d 970, 977 n. 5 (11th Cir. 2000).

[73] 141 Cong. Rec. S7498–01, S7524 (daily ed. May 25, 1995) (Statement of Senator Dole).

> of their civil rights. "The volume of section 1983 litigation is substantial by any standard," according to the Justice Department's report on section 1983 litigation, "*Challenging the Conditions of Prisons and Jails*."[74]

After noting the "while in custody" requirement of the PLRA, Senator Kyl references the problem of § 1983 lawsuits brought by prisoners in the context of the DOJ report "Challenging the Conditions of Prisons and Jails."[75] This report, as evident by its title, deals with "civil lawsuits in federal court [that] challenge the conditions of [prisoners'] confinement in state prisons and jails," claiming that "state officials have deprived the prisoners of their constitutional rights."[76] Senator Kyl placed two documents into the record that reinforce this point. First, he placed into the record a Wall Street Journal Editorial titled "Sue the Warden, Sue the Chef, Sue the Gardener," which examined the problem of frivolous "suits initiated by people claiming a deprivation of their rights *while in prison*."[77] The editorial explained, "Since almost any disciplinary or administrative action *taken by prison officials* now can give rise to a due process or cruel-and-unusual-punishment complaint, the number of these suits is growing at a rate that goes far to explain the "litigation explosion."[78] Second, Senator Kyl placed into the record an editorial from an Arizona newspaper detailing sixteen frivolous prisoner lawsuits—all of them involved prison conditions.[79] The legislative history, then, is clear that the causal basis of the "explosion" of frivolous lawsuits Congress meant to curtail was *prison conditions*

---

[74] 141 Cong. Rec. S7498–01, S7527 (daily ed. May 25, 1995) (Statement of Senator Kyl).
[75] *Id.*
[76] ROGER A. HANSON & HENRY W. K. DALEY, BUREAU OF JUST. STAT., U.S. DEP'T OF JUST., NCJ-151652, CHALLENGING THE CONDITIONS OF PRISONS AND JAILS: A REPORT ON SECTION 1983 LITIGATION 1 ( 1995).
[77] 141 Cong. Rec. S7498–01, S7527 (daily ed. May 25, 1995) (article from *The Wall Street Journal*) (attached to the Congressional Record) (emphasis added).
[78] *Id.* (emphasis added).
[79] 141 Cong. Rec. S7498–01, S7527–28 (daily ed. May 25, 1995) (article from the *Tucson Citizen*) (attached to the Congressional Record).

lawsuits. Nowhere in the legislative history is there any mention of the need to curtail prisoner lawsuits complaining about conduct that occurred before the prisoner was incarcerated, merely because the suit was filed while the Plaintiff was in prison.

The Supreme Court has provided courts guidance on statutory interpretation. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."[80] Furthermore, "[i]n determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."[81]

The Fifth Circuit has offered similar advice. "When interpreting statutory language, words are given their ordinary, plain meanings, and language must be enforced unless ambiguous."[82] That being said, "text should never be divorced from context," which "can mean both the immediate clause and the broader context of the statute as a whole."[83] "If applicable, canons of construction can be used to resolve remaining ambiguity."[84]

Looking at the context, both in the "immediate clause" and in "the broader context of the statute as a whole," one sees repeated references to prisoner lawsuits based on prison conditions. First, consider the broader context of the statute as a whole.[85] Section

---

[80] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).
[81] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).
[82] *United States v. Limon*, 159 F.4th 327, 334-35 (5th Cir. 2025) (quoting *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023), *cert. denied*, ––– U.S. ––––, 144 S. Ct. 551, 217 L.Ed.2d 294 (2024) (mem.)).
[83] *Id.* at 335.
[84] *Id.*
[85] For a similar analysis, see *Napier v. Preslicka*, 314 F.3d 528, 535-36 (11th Cir. 2002) (Napier, J., dissenting), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) (analyzing

1997e's title is "Suits *by prisoners*."[86] The first section, § 1997e(a), expressly provides that "[n]o action shall be brought with respect to *prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[87] Administrative remedies are available to review only actions that occurred while in prison. If Congress had intended to curtail all prisoner lawsuits, Congress could easily have dropped the specific reference to "prison conditions" and deleted the requirement that the prison's administrative remedies be exhausted. The fact that it did not reflects the intent of Congress, as discussed *supra*, for the PLRA to apply only to prisoner lawsuits complaining of prisoner conditions.

The following section, § 1997e(b), refers to an "administrative grievance procedure," which when read in light of § 1997e(a), clearly refers to grievances pertaining to prison conditions and the prison's grievance procedure. The statute provides, "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title."[88] "Section 1997e(c) again makes reference to prison conditions, stating in relevant part:

> The court shall on its own motion or on the motion of a party dismiss any action brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.[89]

section by section § 1997e in concluding that Congress meant to preclude prisoner lawsuits "arising from the terms and conditions of their current imprisonment, not to prevent lawsuits by prisoners in general").
[86] 42 U.S.C. § 1997e (emphasis added).
[87] 42 U.S.C. § 1997e(a).
[88] 42 U.S.C. § 1997e(b).
[89] 42 U.S.C. § 1997e(c).

Section 1997e(f)(1) discusses the means of conducting hearings "in any action brought with respect to *prison conditions*."[90]

Lastly, the canon of statutory construction *noscitur a sociis* confirms this analysis. *Noscitur a sociis* is the canon of construction meaning "known by its associates," and holds that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.[91] The Supreme Court has invoked this canon to ascertain the meaning of ambiguous statutory provisions.[92] As demonstrated above, § 1997e makes frequent reference to "prison conditions."

**B. While the Fifth Circuit has not settled this issue in a published opinion, there is persuasive authority suggesting the PLRA applies only to prisoners' lawsuits complaining about prison conditions.**

The Fifth Circuit has not decided in a precedential manner the issue of whether § 1997e(e) requires a physical injury to recover for emotional injury if the conduct complained of occurred before the prisoner was incarcerated. The Fifth Circuit in *Brown v. Sudduth* did apply § 1997e(e)'s limitation to a prisoner seeking monetary damages for a non-physical injury suffered during a pre-incarceration arrest.[93] It declared, "Brown [the plaintiff] sought compensatory damages for the sole alleged injury of liberty deprivation. Having not alleged a physical injury, the district court correctly concluded that Brown's claim for compensatory damages must fail."[94] However, that case was not

---

[90] 42 U.S.C. § 1997e(f)(1).
[91] *Noscitur a sociis*, BLACK'S LAW DICTIONARY (10th ed. 2014).
[92] *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961); *see Gutierrez v. Camacho,* 528 U.S. 250, 255 (2000); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).
[93] *Brown v. Sudduth*, 255 F. App'x 803, 807-808 (5th Cir. 2007) (unpublished).
[94] *Id.* at 808 (alteration in original) (citations omitted).

designated for publication, and pursuant to Fifth Circuit Local Rule 47.5, is not binding precedent.[95] Thus, this remains an unsettled issue in our Circuit.

Courts in other circuits have addressed this issue, and this Court will consider their opinions as persuasive authority. In *Hill v. Murphy*, a case in the Seventh Circuit, the plaintiff, while incarcerated, filed suit against police officer defendants who allegedly wrongfully entered plaintiff's residence, unlawfully seized his weapon, and unlawfully detained him.[96] Plaintiff, in part, sought damages for emotional distress caused by defendant's violation of his Fourth Amendment rights.[97] The police officer defendants argued that 42 U.S.C. § 1997e(e) barred plaintiff's claim for emotional damages, pointing out Plaintiff was incarcerated at the time he filed suit and he did not allege a physical injury.[98] The Magistrate Judge's Report and Recommendation in that case (adopted in its entirety by the district court judge) rejected Defendant's argument, explaining:

> While Defendants argue that Plaintiff is barred under 42 U.S.C. § 1997e(e), that provision places limits on the damages that an incarcerated person may seek. While Plaintiff was incarcerated when he filed suit, *he does not seek damages related to an injury he received while incarcerated*. Plaintiff is, thus, not limited by the confines of § 1997e(e).[99]

The Magistrate Judge found that § 1997e(e) did not apply to bar Plaintiff's suit because Plaintiff's suit sought damages for conduct that occurred before he was incarcerated.[100] Thus, *Hill* supports a finding that Section 1997e(e) does not apply to bar Plaintiff's claim for mental or emotional damages against Officer Slosarex.

---

[95] *See id.* at 804 n.1 (citing 5TH CIR. R. 47.5).
[96] *Hill v. Murphy*, No. 11-CV-172-JPG-SCW, 2017 WL 1026319, at *9 (S.D. Ill. Feb. 6, 2017), *report and recommendation adopted*, No. 11-CV-172-JPG-SCW, 2017 WL 992737 (S.D. Ill. Mar. 15, 2017).
[97] *Id.* at *1.
[98] *Id.* at *9.
[99] *Id.* (emphasis added).
[100] *See id.*

The Eleventh Circuit addressed this issue in *Napier v. Preslicka* and concluded that § 1997e(e) does bar a claim such as Plaintiff's.[101] In *Napier*, the plaintiff filed a § 1983 action, while imprisoned, against police officers for an arrest that occurred before he was imprisoned.[102] Plaintiff alleged that defendants were told by plaintiff that they had the wrong person but nonetheless persisted in the arrest.[103] Plaintiff sued for damages arising from embarrassment and mental anguish caused by the violation of his Fourth Amendment Rights but did not allege physical injury.[104] Although plaintiff was incarcerated when he filed suit, plaintiff's incarceration was on a separate offense completely unrelated to the mistaken arrest.[105]

The majority discussed two possible interpretations of the phrase "in custody," pointing out that it could refer to the "present custody, that custody for which the prisoner is in fact currently a prisoner, or that the phrase 'in custody' is meant to refer, without reference to the other parts of the statute, to past or present instances of custody."[106] The majority found the latter interpretation to be correct. [107] The court reasoned that "[t]he common usage of 'custody,' in the *Miranda* context in which the definition most often arises, reflects not just imprisonment, but, rather, any situation in which a reasonable individual would feel a restraint on his movement such that he would not feel free to leave."[108] The majority found that it was bound to apply this "plain meaning" of the word, which under a *Miranda* context refers to any "custodial episode, both past and present,

[101] *Napier v. Preslicka*, 314 F.3d 528 (11th Cir. 2002), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021).
[102] *Id.*at 531.
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.* at 532.
[107] *Id.*at 532-34.
[108] *Id.* at 532.

both in prison and in the back seat of a police cruiser."[109] The majority thus applied the PLRA to bar Plaintiff's claim.[110]

The Court finds the reasoning of Judge Propst's and Judge Barkett's dissents in *Napier* to be compelling. In a dissent to the original panel, Judge Propst pointed out that the majority's own discussion of the two possible meanings of "in custody" demonstrates that the statute is ambiguous.[111] Judge Propst then surveyed the context of the PLRA itself, including the other sections of the statute and its legislative history, and concluded that Congress intended the PLRA to apply only to prison conditions lawsuits.[112] He opined, "I cannot agree that a statute passed to limit frivolous litigation with regard to prison conditions applies to an action which accrued before the plaintiff was imprisoned and which is not even related to the charges that led to his imprisonment."[113] Judge Barkett, although not on the original panel, later wrote a dissent from the denial of rehearing *en banc*, also arguing that the "panel's holding finds little support in the language, structure, or history of the PLRA."[114] Judge Barkett argued the majority panel "invoke[d] the plain meaning doctrine where it [did] not apply, thereby expanding the scope of a statute Congress may have meant to apply more narrowly.[115] Instead, Judge Barkett argued the majority panel should have applied the canon of *noscitur a sociis*, that the meaning of a word is known by its companions, as the other parts of the statue pertain to prison conditions.[116] Judge Barkett concluded, "the panel unjustifiably disregards the

---

[109] *Id.* at 534.
[110] *Id.*
[111] *Id.* at 534-535 (Propst, J., dissenting).
[112] *Id.* at 534-537.
[113] *Id.* at 537.
[114] *Napier v. Preslicka*, 331 F.3d 1189, 1190-94 (11th Cir. 2003) (Barkett, J., dissenting) (capitalization removed).
[115] *Id.* at 1193.
[116] *Id.*

'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"[117] For reasons outlined earlier, this Court finds Judge Barkett's and Judge Propst's reasoning more persuasive than that of the majority panel in *Napier*.

These are the only cases the Court has found from other circuits directly addressing the issue. The Fifth Circuit, although it has not directly addressed this issue in a published opinion, has provided guidance on its interpretation of the intent of Congress in enacting the PLRA. In *U.S. v. Cole*, the Fifth Circuit addressed the issue of whether the PLRA's limitations apply to a prisoner's 28 U.S.C. § 2255 action for habeas corpus relief.[118] Although the PLRA applies to "civil actions" brought by prisoners, and that "habeas corpus proceedings are technically civil actions," *Cole* held that the PLRA nonetheless was not applicable to prohibit the action for a number of reasons. One of such reasons, pertinent to the issue in this case, is that "the [Act] was aimed primarily at prisoners' suits *challenging prison conditions*, many of which are routinely dismissed as frivolous."[119] Thus, the Fifth Circuit in *Cole* found it would not make sense to apply the PLRA to a habeas corpus petition that by its nature is not aimed at challenging prison conditions.[120] Applying *Cole's* rationale, it likewise does not make sense to apply the PLRA to a prisoner lawsuit challenging a pre-incarceration interaction with a police officer unrelated to the prison conditions at the time the suit is filed.

[117] *Id.* at 1194 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).
[118] *United States v. Cole*, 101 F.3d 1076, 1076 (5th Cir. 1996).
[119] *Id.* at 1077 (emphasis added) (quoting *Reyes v. Keane*, 90 F.3d 676 (2nd Cir. 1996)) (calling such argument "persuasive").
[120] *See id.*

Other circuits have agreed with *Cole*. The Sixth Circuit, in *Kincade v. Sparkman* discussed the same issue in *Cole* of whether the PLRA applies to habeas corpus petitions.[121] It found the PLRA did not apply to a habeas proceeding, in part because applying the PLRA would not comport with the legislative intent of the Act. The court declared, "[t]he two floor debates and hearing concerning the Prison Litigation Reform Act simply focused on more examples of frivolous prison condition suits . . . . The text of the Prison Litigation Reform Act itself reflects that the *drafters' primary objective was to curb prison condition litigation*."[122] The Tenth Circuit also found the same in *United States v. Simmonds*, writing that "[t]he main purpose of the Prison Litigation Reform Act was to curtail abusive prison-condition litigation."[123] While the Third Circuit in *Santana v. United States* admitted "we do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison conditions," it declared that "where a claim is not analogous to such a suit, the PLRA should be applied *with caution*."[124]

In view of principles of statutory interpretation, the legislative history behind § 1997e, and the reasoning of persuasive authority from other circuits, this Court finds that § 1997e(e) does not apply to bar Plaintiff's claim.[125] Given that this Court agrees with the

---

[121] *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir.1997).
[122] *Id.* at 951 (emphasis added).
[123] *United States v. Simmonds*, 111 F.3d 737, 743 (10th Cir.1997). *But see Royal v. Kautzky*, 375 F.3d 720, 729 n.5 (8th Cir. 2004) (Heaney, J., dissenting) (citing James E. Robertson, *Psychological Injury and the Prison Litigation Reform Act: A "Not Exactly" Equal Protection Analysis*, 37 HARV. J. ON LEGIS. 105, 114 (2000) ("To be fair, there is almost nothing in the legislative history as to § 1997e(e) at all. According to one scholar, '[n]o aspect of the PLRA received less congressional deliberation than § 1997e(e).'")).
[124] *Santana v. United States*, 98 F.3d 752, 756 (3d Cir. 1996) (emphasis added).
[125] The Court recognizes this case is a close call. The Magistrate Judge's Report and Recommendation in this action relied on three cases in making a contrary finding. R. Doc. 32 at p. 11 nn. 34-36. In the first, *Brown v. Sudduth*, the Fifth Circuit applied the PLRA to a pre-incarceration event, but *Brown* is unpublished and therefore not binding. *Brown v. Sudduth*, 255 F. App'x 803, 807-808 (5th Cir. 2007). The second and third cases, *Hutchins v. McDaniels* and *Geiger v. Jowers*, applied the PLRA to a prisoner lawsuit requesting compensatory damages for emotional distress but without alleging a physical injury. R. Doc. 32 at p. 11, nn. 34-35. However, *Hutchins* and *Geiger* involved prisoner lawsuits complaining about prison conditions, not pre-incarceration events, and are thus distinguishable from this case. *See Hutchins*

Magistrate Judge that "[t]aking Sherman's assertions as true, which the Court does at this stage of the proceedings, Sherman appears to state a non-frivolous claim against Officer Slosarex for an unreasonable seizure on November 8, 2022,"[126] this Court on *de novo* review finds that Plaintiff's claim against Officer Slosarex should be allowed to proceed.

**CONCLUSION**

The Court, having considered the record, the applicable law, relevant filings, and the Magistrate Judge's Report and Recommendation, **ADOPTS** the Magistrate Judge's findings of facts and conclusions of law with respect to Plaintiff's claims against the Thibodaux Police Department. The Court **DECLINES TO ADOPT** the Magistrate Judge's findings of facts and conclusions of law with respect to Plaintiff's claims against Officer Jason Slosarex.

**IT IS ORDERED** that Plaintiff Sherman's § 1983 claims against the Thibodaux Police Department, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(2)(B), and § 1915A(b).

**IT IS FURTHER ORDERED** that Plaintiff Sherman's § 1983 claims against Officer Jason Slosarex be allowed to proceed.

---

*v. McDaniels*, 512 F.3d 193 (5th Cir. 2007); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Other sections of this court and other districts within the Fifth Circuit have applied the PLRA to pre-incarceration events, but they have not directly addressed whether the statute is ambiguous or not and have relied on cases that are clearly distinguishable. *See, e.g.*, *Gaten v. NOPD Strike Unit*, No. CV 26-338, 2026 WL 1291248, at *4 (E.D. La. Apr. 2, 2026) (applying 42 U.S.C. § 1997e(e)'s limitation to recommend dismissal of a compensatory damages request arising from unlawful search and arrest claim), *report and recommendation adopted*, No. CV 26-338, 2026 WL 1286476 (E.D. La. May 8, 2026*); Stewart v. Ramirez*, No. H-08-449, 2009 WL 890394 (S.D. Tex. Mar. 27, 2009) (citing *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir.2007) (same). However, *Gaten* also relies on *Brown, Geiger,* and *Hutchins*, which are either not binding or are distinguishable, as discussed above. *Gaten*, 2026 WL 1291248 at *4. *Stewart* also relies on *Brown* and *Hutchins*, which again, are precedents that are either not binding on this Court or are distinguishable. *Stewart*, 2009 WL 890394 at *3.

[126] R. Doc. 32 at p. 10.

**IT IS FURTHER ORDERED** that the matter should remain referred to the assigned Magistrate Judge for further proceedings consistent with this Order.

**New Orleans, Louisiana, this 3rd day of November, 2026.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**